Maynard MESSER, Carl Haugen, Charles Guman, Lloyd Menz, Marshal Menz, Chester Menz, Dan Wogsland, Richard Wogsland, Vernon Wogsland, Gilman Goplen, Carl Goplen, Robert Hanson and Josephine Hanson, Petitioners and Appellees,

v.

STATE WATER COMMISSION and Vernon Fahy, State Engineer, Respondents,

and

Barnes County Water Management District, Respondent and Appellant.

Civ. No. 10298.

Supreme Court of North Dakota.

March 29, 1983.

viding surface drainage" of approximately 400 acres within Barnes County. Over 3,000 acres, some of which are located in neighboring Griggs County, lay within the watershed area of the proposed drain. Included in this affected area are 241 acres of Federal Waterfowl Production Area which provides habitat and nesting areas for waterfowl. Also in the area is Lake Ashtabula, a lake currently facing oxygen problems caused by accumulations of nutrients within the water. Evidence disclosed that the proposed drain could increase the amounts of nutrients entering the lake, threatening to totally destroy its fish population.

The outlet of the proposed drainage system would be a tributary of the Sheyenne River. If the drain were built, the rate of flow in the present natural drainage area would increase, resulting in prolonged flooding of some land within the watershed area.

The court, in its findings of fact upon which the order revoking the permit to drain was based, found that the Water Resource District and State Engineer failed to make an adequate investigation of the impact of the proposed drainage on downstream land, lakeshore property and waterfowl production areas, and that the benefits of the project did not exceed its costs. In addition, the court found that the landowners had not been afforded a fair hearing before the Water Resource Board and that they had properly appealed the decision to grant a permit to drain.

· Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, and Charles K. Dayton and Jonathan L. Eisenberg of Pepin, Dayton, Herman, Graham & Getts, Minneapolis, Minn., for petitioners and appellees; argued by Charles K. Dayton, Minneapolis, Minn.

Joseph J. Cichy, Asst. Atty. Gen., State Water Commission, Bismarck, for State Water Commission; no appearance.

Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for appellant; argued by Duane R. Breitling, West Fargo.

PEDERSON, Justice.

This is an appeal by the State Water Commission, State Engineer, and Barnes County Water Resource District[1] from a judgment of the district court which reversed the Water Resource District's decision establishing a drain and granting a permit to drain waters in northeast Barnes County. We affirm.

The drainage project is designed to "maintain agricultural production by pro-

I.

Until the Legislature repealed much of Chapters 61–16 and 61–21, drainage projects were handled by water management districts (Chapter 61–16, NDCC), or by county drain boards (Chapter 61–21, NDCC).[2] Barnes County had both a water

1. At the time of the lawsuit, water resource districts were known as water management districts. The Legislature changed the name of the districts in 1981. 1981 N.D. Sess. Laws, Ch. 632. Rule 25(d), NDRCivP. For the pur-
poses of this opinion, we will refer to the Water Management District as the Water Resource District.

2. Because of the duplication of functions between county drain boards and water manage-

management board and a board of drainage commissioners, although membership of the boards was identical.

A board of drainage commissioners was authorized to implement drainage projects within each county of the state. Section 61–21–03, NDCC, repealed by 1981 N.D. Sess. Laws, Ch. 632, § 12. Before a drain was established, a written petition stating the beginning and ending points of the proposed drain and its general course was submitted to the board. Section 61–21–12, NDCC. The board inspected the line of the proposed drain and obtained an engineer's or surveyor's report on the specifications and costs of the proposed drain. Section 61–21–12, NDCC. After receiving the engineer's report, the board held a public hearing at which affected landowners were entitled to vote either in favor of or against the proposal. Section 61–21–13, NDCC. If more than fifty percent of the votes were in favor of the proposed drain and the board determined that the project costs would not outweigh the anticipated benefits, the board prepared an order establishing the drain. Section 61–21–14, NDCC. The board would then apply for a permit to drain. Section 61–01–22, NDCC.

Prior to its repeal in 1981, § 61–01–22, NDCC[3] set forth the procedure to obtain a permit to drain waters as follows:

"Any person, before draining water from a pond, slough, or lake ... which drains an area comprising eighty acres or more into a watercourse ... shall first secure a permit to do so. The permit application shall be submitted to the state engineer. The state engineer shall refer the application to the board of commissioners of the water management district or districts within which is found a majority of the watershed or drainage area of the pond, slough, or lake for consideration and approval, but the state engineer

may require that applications proposing drainage of statewide or interdistrict significance be returned to him for final approval. A permit shall not be granted until an investigation shall disclose that the quantity of water which will be drained from the pond, slough, or lake, or any series thereof, will not flood or adversely affect lands of lower proprietors. . . . "

A petition to establish a drain was properly filed with the county drain board pursuant to § 61–21–10, NDCC. The county drain board then submitted a permit application to the State Engineer on March 11, 1980. The State Engineer determined that the drain was of "statewide or interdistrict" significance and required that the permit be returned to him for final approval. The State Engineer then referred the application to Barnes County Water Resource District. A hearing on the proposed drain was held on July 24, 1980. The Water Resource District Board approved the permit on October 1, 1980 and returned it to the State Engineer for final approval. The State Engineer approved the permit on May 19, 1981 and notified the Water Resource District on May 21, 1981. Affected landowners in Griggs County who apparently did not receive notice of the proposed drain appealed on June 21, 1981.

## II.

The landowners appealed only from the order of the State Engineer granting final approval of the drain. They did not appeal from the findings and order of the Barnes County Water Resource District establishing the drain. Because of this, the Water Resource District asserts that the landowners cannot now collaterally challenge the findings and order establishing the drain.

---

ment districts, the 1981 Legislature eliminated existing water management districts and county drain boards by repealing much of Chapters 61–16 and 61–21, and creating "water resource districts." Chapter 61–16.1, NDCC. 1981 N.D. Sess. Laws, Ch. 632.

3. The current version of § 61–01–22, NDCC appears at § 61–16.1–41. The application process and the method of establishing a drain remains the same.

The Water Resource District asserts that any appeal by the landowners must be taken pursuant to § 61–21–18, NDCC, which provides that:

"Any person whose land is assessed or may be assessed or is condemned or may be condemned for the construction of a drain under the provisions of this chapter may appeal to the district court from the order of the board establishing or denying the establishment of the drain. Such appeal shall be taken and perfected within thirty days from and after the date of publication of the 'notice of order establishing the drain and time of expiration of right of appeal'."

The notice of the order establishing the drain was published on March 11, 1981. When the landowners did not appeal within thirty days, the Water Resource District concluded that "any issue which could have been fairly litigated on an appeal pursuant to § 61–21–18, NDCC cannot now be raised."

The landowners, however, contend that their appeal was properly filed pursuant to § 61–16–38, NDCC, and therefore this court has jurisdiction to review the Water Resource District's "preliminary" approval of the permit as well as the State Engineer's final approval. Section 61–16–38 provides that:

"An appeal . . . when taken from a decision of the commission [State Water Commission] must be taken within thirty days after the order of the commission has been filed with the secretary of the water conservation and flood control district [currently Water Resource District], and when taken from a decision of the board of commissioners [of the Water Resource District], it must be taken within thirty days after such decision has been entered by the secretary of the board of commissioners."

The landowners appealed within thirty days of the State Engineer's order to approve the drain permit.

We do not agree that the decision of the State Engineer is appealable. In North Dakota the right to appeal is purely statutory. *Young v. White*, 267 N.W.2d 799, 800 (N.D.1978). We can find no explicit statutory right to appeal the State Engineer's decision to approve or reject an application for a permit to drain.[4] However, landowners in Griggs County did not receive "notice of hearing" and consequently had no opportunity to be heard, even though their land was within the area affected by the proposed drain. Accordingly, we treat the landowners' action as a proper attack on the decision of the State Engineer.

### III.

█ The landowners contend that the State Engineer's decision to approve the drain must be reversed because the drain was not "lawfully established." They argue that the Water Resource District failed to submit a petition to the Griggs County Water Resource District, as required by §§ 61–21–33 and 61–21–34, NDCC, and that the Water Resource District and State Engineer failed to find that waters drained would not adversely affect downstream land, as required by § 61–01–22, NDCC.

Section 61–21–33, NDCC, provides that the procedure set forth in § 61–21–34 must be followed "whenever it shall be deemed necessary . . . to construct or extend a drain through or into two or more counties in this state . . . ." Section 61–21–34, NDCC, provides, in part, that:

"In order to construct or extend a drain through or into two or more counties in this state, a petition shall be presented to the several boards of drainage commis-

4. Prior to 1981 an appeal from an order or decision of the State Water Commission could have been initiated pursuant to § 61–16–36, NDCC. See 1981 N.D. Sess. Laws, Ch. 632, Sec. 11. The lower court found that because the State Engineer is the secretary and chief engineer of the State Water Commission (§ 61–03–01, NDCC), his decisions are review-able. We do not agree that when the decisions of the Commission are appealable, the decisions of the State Engineer are also appealable as a matter of law.

We note that § 61–03–22, NDCC, as currently amended, permits a general appeal from decisions of the State Engineer. See 1981 N.D. Sess. Laws, Ch. 628, Sec. 2.

sioners for the establishment of such drain in their several counties as provided in this chapter. *The boards of such several counties shall hold a joint meeting and shall determine the necessity or expediency of the establishment of such drain.* The several boards of all counties through or into which such proposed drain may run shall agree upon the proportion of damages and benefits to accrue to the lands affected in each county, and for this purpose they shall consider the entire course of said drain through all said counties as one drain. Should the boards fail to agree upon the benefits to accrue to the lands in each county they shall submit the points in controversy to the state engineer of the water conservation commission, and his decision thereon shall be final." [Emphasis added.]

The landowners argue that because the proposed drain extends beyond Barnes County and requires drain construction and channel improvements within Griggs County, the Barnes County Water Resource District was required to hold a joint meeting to determine the propriety of the drain.[5] The Barnes County Water Resource District does not dispute that construction will be required within Griggs County.

Barnes County Water Resource District concedes that it did not comply with § 61–21–34, NDCC, but asserts that it was not required to do so. The Water Resource District argues that only an "outlet" for the proposed drain, and not the drain itself, extends into Griggs County.

The Water Resource District relies upon § 61–21–64, NDCC, as support for their position that counties may use different procedures to establish a "drain" and an "outlet." Section 61–21–64 provides that:

"A board of drain commissioners may, if found necessary, by process of eminent domain acquire land needed for a sufficient outlet for any established drain."

No definition of "outlet" is otherwise provided in the chapter. An "outlet," as defined by Webster's Dictionary 1602

(1971), is "a stream flowing out of a lake or pond; the channel through which such a stream flows." A "drain" includes any natural watercourse, opened or to be opened and improved, for drainage purposes and artificial drains of all kinds "including dikes and appurtenant works...." Section 61–21–01, NDCC.

We cannot find that a county may circumvent the intent of § 61–21–34 by defining a channel as a "drain" so long as it remains within their county, and then defining the same channel as an "outlet" when it extends beyond their county. We find nothing in Chapter 61–21 which allows counties to "establish" outlets in neighboring counties without their consent. Thus, we conclude that Barnes County Water Resource District cannot establish a multi-county drainage project without conferring with Griggs County as required by § 61–21–34, NDCC.

Because we affirm after examining the landowner's first argument, we will not consider their other arguments. *Morris v. Richland Cty. Bd. of Drain Com'rs*, 313 N.W.2d 763, 764 (N.D.1981). The judgment of the district court is affirmed.

ERICKSTAD, C.J., VANDE WALLE and SAND, JJ., and LECLERC, District Judge, concur.

LECLERC, D.J. sitting in place of PAULSON, J., disqualified.

---

**5.** Landowners presented evidence indicating that Griggs County officials "strongly oppose" the drainage project and would not have approved a permit to drain.